## MIDDLESEX COUNTY.

### ELIAS HOWE *vs.* JOSEPH NEWMARCH.

If a servant does a wrongful act without the authority and not for the purpose of executing the orders or doing the work of his master, the latter is not responsible in damages therefor; but if the act be done in the execution of the authority given by the master, and for the purpose of performing what he has directed, he is responsible, whether the wrong done be occasioned by negligence or by a wanton and reckless purpose to ac- complish his business in an unlawful manner.

TORT to recover damages sustained by reason of the negli- gence of the defendant's servant, in driving against the plaintiff in Cambridge.

At the trial in the superior court, before *Vose*, J., it appeared that the defendant was a baker and employed William S. Brown to drive his wagon and deliver bread to his customers. There was a city ordinance prohibiting riding or driving upon any side- walk in Cambridge. The plaintiff introduced evidence tending to show that on the morning of July 9th 1857 he came upon a sidewalk in Cambridge, in front of a house owned by him, and turning to walk upon it he saw the defendant's horse and wagon upon the same sidewalk, in front of another house near by, and facing towards him ; that he proceeded on the sidewalk till he

got within some twelve feet of the horse, when Brown came out from that house pretty fast, threw his basket upon the wagon and jumped to get on the seat, and the horse started, and the plaintiff turned round to escape, when the horse struck him and he was thrown down and injured.

The defendant introduced evidence tending to show that, on the day before the one referred to above, the plaintiff had told Brown not to drive on the sidewalk in front of his premises, and they then had some dispute together, and, on the morning of July 9th, when Brown came out from the house, the plaintiff stood leaning against the fence, and, as soon as the horse started, the plaintiff walked across the sidewalk and caught him by the bridle and pulled him in towards the fence, and Brown jumped off and told the plaintiff to let go of the horse, which he did, and Brown got in and started again, and as he began to turn the horse into the street the plaintiff took hold of him again, and Brown again told him to let go, and the plaintiff did not let go, and Brown, after again telling the plaintiff to let go, started the horse, and the plaintiff, who still held on to the bridle, was thrown down. There was no evidence that the defendant knew of Brown's habit of driving on the sidewalk, or had ever given directions where he should drive.

The plaintiff requested the court to instruct the jury as follows :

" 1. If the jury are satisfied that the defendant's servant, with his team, met the plaintiff on the sidewalk adjoining the plaintiff's premises, and neither of them would give the road, and the defendant's servant insisted on proceeding on the sidewalk, and a contest ensued in which the servant urged on his team, by means of which the plaintiff sustained an injury, a verdict should be rendered for the plaintiff, unless the injury resulted from want of due care on the part of the plaintiff. 2. If at the time of the injury the defendant's servant was engaged in the business of the defendant, and within the scope of his duty as such servant and he drove the horse over the plaintiff and did him an injury the defendant is responsible, whether the act was done wilfully or negligently, the plaintiff being in the exercise of due care himself."

The judge declined to give the instructions prayed for, but did instruct the jury that, if they were satisfied that the defendant's servant, with his team, met the plaintiff on the sidewalk adjoining the plaintiff's premises, and neither of them would give the road, and the defendant's servant insisted on proceeding on the sidewalk, and a contest ensued in which the defendant's servant carelessly or negligently, but without the purpose or intention of driving against the plaintiff or doing him an injury, urged on his horse, by means of which the plaintiff sustained an injury, a verdict should be returned for the plaintiff, unless the want of due care on the part of the plaintiff contributed to the injury. And if Brown, while acting as the servant of the defendant in driving from house to house and delivering bread, wilfully and intentionally drove the horse upon the plaintiff for the purpose of carrying out his wish to drive unlawfully upon the sidewalk opposite the plaintiff's house, notwithstanding the remonstrance of the plaintiff, and thereby caused the injury complained of, and he did this without any previous direction or authority from the defendant, then the defendant is not responsible for such wrongful act of his servant."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*C. H. Hudson*, (*A. Cottrell* with him,) for the plaintiff, cited *Philadelphia, &c., Railroad* v. *Derby*, 14 How. 468; *Althof* v. *Wolf*, 2 Hilton, (N. Y.) 354; *Hewett* v. *Swift*, 3 Allen, 423; *Powell* v. *Deveney*, 3 Cush. 300; 2 Kent Com. (6th ed.) 259.

*S. J. Thomas*, for the defendant. Not everything which a servant does while attending to his master's business is done in the course or pursuit of that business. It is necessary, therefore, to see what the servant was employed to do. In this case, the servant was employed to leave bread with his master's customers; not to drive on the sidewalk or run over people. Nor is the master responsible for having employed an unfaithful servant. If Brown, while leaving bread at the house of one of his master's customers, had committed larceny therein, would the defendant have been liable? Clearly not, because such act was not in pursuance of the employment, but aside from it, and

because a master does not engage that his servant shall not be unfaithful. The master is deemed to be liable for acts of his servant from his supposed power of choice and control. He undertakes for reasonable care and skill, and is liable for blunders · but he does not undertake for faithfulness, and is not liable for his servant's crimes. *Foster* v. *Essex Bank,* 17 Mass. 509. *Lyons* v. *Martin,* 8 Ad. & El. 512. *M'Manus* v. *Crickett,* 1 East, 106. *Richmond Turnpike Co.* v. *Vanderbilt,* 1 Hill, 480.

HOAR, J. The second instruction requested by the plaintiff at the trial, that "if at the time of the injury the defendant's servant was engaged in the business of the defendant, and within the scope of his duty as such servant, and he drove the horse over the plaintiff and did him an injury, the defendant is responsible, whether the act was done wilfully or negligently, the plaintiff being in the exercise of due care himself," seems to have been stated with substantial accuracy. It makes the test of the defendant's liability, not the intention of the servant, but the fact that the injurious act was done while engaged in his master's business, and within the scope of his duty as a servant. If the act of driving over the plaintiff was done wilfully, still it may also have been done negligently in the view of the law ; that is, in disregard of the plaintiff's rights, and neglect and omission of the precautions necessary to his safety. It is obvious that the test of the master's liability cannot be whether the servant is a trespasser; for he who uses force upon the person or property of another is a trespasser, whether his violence be accidental or intentional, if it is without lawful justification. But if the servant is strictly within the scope of his employment, doing his master's work, and, for the purpose of doing what he is employed to do, does it in a manner which violates the rights of another, it is difficult to see why the master should be exempted from responsibility, because the servant knows that his act will be injurious, and intends to do it. If the consent of the master is made the ground of his liability, the master is no more consenting to the thoughtless negligence of his servant than to his wilful negligence. The authorities all agree that, where an action is brought against the master for an injury occasioned by

the servant's negligence in his service, it is no defence to show that the master directed the servant to be careful; or even that he cautioned him against the particular act of negligence which produced the injury. *Southwick* v. *Estes*, 7 Cush. 385.

The act which causes the injury may be precisely the same, whether merely careless or intentional, and the authority of the master wanting as much in one case as in the other. Thus, if a servant driving his master's carriage becomes entangled in a crowd of other carriages, and is impatient to drive on, and there is not room to pass with safety, and reasonable care and prudence would require him to wait; but he persists in driving on, and in so doing strikes another carriage; this is negligence for which the master is responsible. Is the master's responsibility at an end if it is shown that the servant saw that he should strike the other carriage, and intended to extricate himself by so doing? He is in his master's employment in the one case as in the other. If his master has directed him to drive carefully, he is in each case alike acting without his master's authority or approval. His purpose in each case may be to do his master's work which he is employed to do. In the former, he does not think of or care for the rights of the other party, and so is negligent. In the latter, he perceives and understands the rights of the other party, but determines to disregard them.

It is not easy to reconcile the numerous cases on this subject. The leading case on which the defendant relies is *M'Manus* v. *Crickett*, 1 East, 106. That case merely decided that trespass *vi et armis* would not lie against a master for the wilful trespass of his servant, which was not authorized or consented to by the master, either directly or by implication from the nature or subject matter of his employment. The decision rests entirely upon the distinction between trespass and trespass on the case. Lord Kenyon says that " when a servant quits sight of the object for which he is employed, and, without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and, according to the doctrine of Lord Holt, his master will not be answerable for such act." But he adds that " this doctrine does not at all

militate with the cases in which a master has been holden liable for the mischief arising from the negligence or unskilfulness of his servant who had no purpose but the execution of his master's orders ; " but that the form of such action must be case and not trespass. There is nothing in the opinion which bears upon the intermediate case of a servant who does not " quit sight of the object for which he is employed," but for the purpose of executing his master's orders, and in the course of his employment does an act injurious to another, or in disregard of his rights. The case of *Savignac* v. *Roome*, 6 T. R. 125, and *Ogle* v. *Barnes*, 8 T. R. 188, turned upon the same distinction between trespass and case.

*M'Manus* v. *Crickett* has been recognized as an authority in this commonwealth in *Foster* v. *Essex Bank*, 17 Mass. 510; which was an action against the bank for the amount of a special deposit in gold which had been stolen from the vault by the cashier or chief clerk. The bank was held not liable for the loss. The court state the general rule to be, " that to make the master liable for any act of fraud or negligence done by his servant, the act must be done in the course of his employment; and that if he steps out of it to do a wrong, either fraudulently or feloniously, towards another, the master is no more answerable than any stranger." In *Lyons* v. *Martin*, 8 Ad. & El. 512, the master had employed his servant to distrain horses *damage feasant* in his close; and it was held that he was not answerable in trespass for the act of his servant in driving the plaintiff's horse from the highway into the close in order to distrain him, as not being an act done by the master's authority, or in the course of the servant's employment. In *Richmond Turnpike Co.* v. *Vanderbilt*, 1 Hill, 480, it was held that the owner of a steamboat is not responsible in an action on the case, for the wilful misconduct of the master in running her against and injuring another boat. And in *Wright* v. *Wilcox*, 19 Wend. 343, it was decided that if the act of the servant was wilful, although in the performance of his master's business, the master is not responsible in an action on the case, because " the law holds such wilful act a departure from the master's business."

This distinction has not been approved by several of the text writers. It is questioned by Judge Reeve in his treatise on the Domestic Relations, 357, 358; in Redfield on Railways, 384, *note;* and is stated with some qualification in Smith on Master & Servant, 172 *& seq.*

In *Croft* v. *Alison*, 4 B. & Ald. 590, the court of king's bench say that "the distinction is this: if a servant driving a carriage, in order to effect some purpose of his own, wantonly strike the horses of another person, and produce the accident, the master will not be liable. But if, in order to perform his master's orders, he strikes, but injudiciously, and in order to extricate himself from a difficulty, that will be negligent and careless conduct, for which the master will be liable, being an act done in pursuance of the servant's employment." The case showed that the defendant's servant had wilfully struck the plaintiff's horses, when driving his master's carriage, in order to extricate himself from an entanglement of the carriages occasioned by his own fault, and thereby had caused an injury to the plaintiff's carriage; and a verdict for the plaintiff was supported. The action was case for negligence.

In *Seymour* v. *Greenwood*, 6 Hurlst. & Norm. 359, Chief Baron Pollock asks the question, "Suppose a servant driving along a road, in order to avoid a danger intentionally drove against the carriage of another, would not the master be responsible?" And in *Limpus* v. *London General Omnibus Co.* 1 Hurlst. & Colt. 526, it was decided in the exchequer chamber that the master is responsible if the servant is in the course of doing the master's work, and does the act to accomplish it.

Wherever there is a contract between the master and another person, the master is responsible for the acts of his servant in executing the contract, although the act is fraudulent, and done without his consent. So far the authorities are uniform. And this court has held the master answerable as a trespasser, where the servant committed a trespass in the course of his employment, and the business in which he was employed implied the use of force or violence to the persons or property of others, although the trespass consisted only in the use of force excessive

in degree. *Moore* v. *Fitchburg Railroad,* 4 Gray, 465. *Hewett* v. *Swift,* 3 Allen, 420.

The instructions asked by the plaintiff at the trial were refused ; and the court instructed the jury that if the defendant's servant carelessly or negligently, but without the purpose or intention of driving against the plaintiff, urged on his horse, and so injured him, the defendant would be answerable ; but that if the servant, " while acting as the servant of the defendant in driving from house to house and delivering bread, wilfully and intentionally drove the horse upon the plaintiff for the purpose of carrying out his wish to drive unlawfully upon the sidewalk opposite the plaintiff's house, notwithstanding the remonstrance of the plaintiff, and thereby caused the injury complained of, and he did this without any previous direction or authority from the defendant, then the defendant was not responsible."

The objection to the latter branch of the instruction is, that it gives the jury no guide for their action in case they should find that the servant was within the scope of his employment, and was intending to do his master's work ; and that his intention to drive against the plaintiff was only as a means of doing it. We think that, upon the facts reported, the jury might have been satisfied that the servant's driving on, though intentional, was not merely for the purpose of injuring the plaintiff. He was already upon the sidewalk, and may have wished to go on for the purpose of continuing his journey, and delivering bread to his master's customers, although he saw that in so doing he should drive against the plaintiff, who was resisting his progress. He would not then have been acting for a purpose of his own, losing sight of the object for which he was employed.

With the views we have taken of the law, we think the instructions given were defective, and that they did not fully supply the rule which the case required. The rule may be stated thus : The master is not responsible as a trespasser, unless by direct or implied authority to the servant he consents to the wrongful act. But if the master give an order to a servant which implies the use of force and violence to others, leaving to

the discretion of the servant to decide when the occasion arises to which the order applies, and the extent and kind of force to be used, he is liable, if the servant in executing the order makes use of force in a manner or to a degree which is unjustifiable. And in an action of tort in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders, or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner.

It is not certain that the point to which the exceptions apply was essential to the decision of the case. If the plaintiff's evidence were believed, it would seem to be a case of negligence for which the jury were instructed that the master would be responsible. If the defendant's evidence were entitled to credit, the plaintiff could hardly have recovered, by reason of the want of ordinary care on his own part. But we cannot judicially know what view the jury may have taken of the evidence; and the ruling of the court appearing to be defective, there must be a new trial.      *Exceptions sustained.*