[No. 1446. Decided January 4, 1895.]

ROBERT THORBURN ET AL., *Appellants, v.* C. J. SMITH ET AL., *Respondents.*

NEGLIGENCE—LIABILITY OF MASTER FOR ACTS OF SERVANT.

Although a company, in order to operate its mines after a strike, has been compelled to employ new men and furnish them with guns and ammunition for protection against the assaults of the strikers, yet neither the company nor its vice principals can be held liable for injuries received by a woman while in her dwelling house, as the result of a shot fired by one of the miners, when it appears that the guns had been stored for some time in the company's store house, that on the day of the injury complained of one of the miners had been shot, presumably by a striker, that the day was Sunday and the miners were not at work, that towards evening, upon the approach of a carload of their fellow miners from another mine considerable shooting from and toward the train was kept up, and the miners, becoming excited, forcibly took possession of the fire arms in the company's store house, without the consent or direction of any of the company's vice principals, and began indiscriminate firing, from which cause the injury to the woman resulted.

*Appeal from Superior Court, King County.*

*Thompson, Edsen & Humphries,* for appellants.

Any person or persons furnishing arms and ammunition to irresponsible parties are liable for all injury accruing on account of their acts. *Weston v. Commonwealth,* 111 Pa. St. 251; *Binford v. Johnston,* 82 Ind. 426; *Clark v. Chambers,* 7 Cent. Law Jour. 11; *Colvin v. Peabody,* 29 N. E. 59; *State v. Forsythe,* 89 Mo. 667; *Roberts v. State,* 14 Mo. 138.

A corporation is liable, like an individual, to make compensation for any tort committed by an agent in the course of his employment, although the act is done wantonly and recklessly, or against the ex-

press orders of the principal. *Dickson v. Waldron*, 34 N. E. 506; *Hoverson v. Noker*, 60 Wis. 511; *McClung v. Dearborne*, 19 Atl. 698; *Lynch v. Metropolitan Elevated Ry. Co.*, 90 N. Y. 77.

In the case at bar there was a conspiracy to intimidate the miners who had been employed at the Franklin mines. Vicious, dissipated, drunken agents were employed for the purpose, and were armed with deadly weapons, and every person connected with the conspiracy is liable for the damage done by one of the conspirators, as their whole conduct was unlawful. *Illinois Central R. R. Co. v. Hammer*, 72 Ill. 347; *State v. McCahill*, 72 Iowa, 111; *Wright v. Compton*, 53 Ind. 337; *Weick v. Lander*, 75 Ill. 93.

*Andrew F. Burleigh*, for respondents.

It nowhere appears from the testimony that the acts which are complained of were performed by any of the respondents personally, or by any of the employes of the respondents acting in the course of their duty. To hold the respondents liable for the acts of their employes it must clearly appear that such employe was acting as an employe of the respondent in the proper scope of his authority, and in the discharge of his duty. *Gillaspie v. Wesson*, 7 Port. 454 (31 Am. Dec. 715); *Wood v. Goodridge*, 6 Cush. 117 (52 Am. Dec. 771); *Brown v. Johnson*, 12 Smedes & M. 398 (51 Am. Dec. 118); *St. Louis v. Gorman*, 29 Mo. 593 (77 Am. Dec. 588); *McCoy v. McKowen*, 59 Am. Dec. 264; *Keener v. Harrod*, 2 Md. 63 (56 Am. Dec. 706); *Goodloe v. Godley*, 13 Smedes & M. 233 (51 Am. Dec. 159); *McKeon v. Citizen's Ry. Co.*, 42 Mo. 79; *Harris v. Nicholas*, 5 Munf. 483.

The principal or master is not liable for the action of his agent or servant not within the real or apparent scope of his employment. If the agent or servant steps outside of his employment to do some act for himself, not connected with the principal's business, the latter will not be liable for the negligence while so engaged. *Isaacs v. Third Ave. R. R. Co.*, 47 N. Y. 122; *Maddox v. Brown*, 71 Me. 432 (36 Am. Rep. 336); *Bard v. Yohn*, 26 Pa. St. 482; *Herlihy v. Smith*, 116 Mass. 265; *Sheridan v. Charlick*, 4 Daly, 338; *Cavanagh v. Dinsmore*, 12 Hun, 465; *Stone v. Hills*, 45 Conn. 44 (29 Am. Rep. 635); Mechem, Agency, § 737; *Stevens v. Woodward*, 6 Q. B. Div. 318; *Adams v. Cost*, 62 Md. 264 (50 Am. Rep. 211); *Fraser v. Freeman*, 43 N. Y. 566.

The principal is not liable for the acts of the agent when they are done outside of the agent's employment and beyond the scope of his authority, as where the agent steps aside from his employment to gratify some personal animosity or to give vent to some private feeling of his own, unless such acts are authorized or ratified by the

principal. *Gilliam v. Railroad Co.*, 70 Ala. 268; *McManus v. Crickett*, 1 East, 106; *Wright v. Wilcox*, 19 Wend. 345 (32 Am. Dec. 507); *Tuller v. Voght*, 13 Ill. 285; *Foster v. Essex Bank*, 17 Mass. 479 (9 Am. Dec. 168 ); *Church v. Mansfield*, 20 Conn. 284; *Illinois Central R. R. Co. v. Downey*, 18 Ill. 259; *Lachat v. Lutz*, 22 S. W. 218; *Gregory's Adm'r v. Ohio River R. R. Co.*, 16 S. E. 819; *Railway Co. v. Douglass*, 11 South. 933.

The opinion of the court was delivered by

Scott, J.—This is an action for damages resulting from a gun-shot wound inflicted upon the person of Ellen Thorburn. At the close of the testimony in chief, the court granted a motion for a non-suit; whereupon this appeal was taken.

The Oregon Improvement Company is a corporation, and as a part of its business, was operating certain coal mines in King county. C. J. Smith and T. B. Corey were officers of said company, and M. C. Sullivan was superintendent of Thiel's Detective Agency of Portland, Oregon. It appears from the testimony that the employes of said company had for some months prior to May, 1891, greatly interfered with the operation of said mines, and had practically taken the management thereof from the company; that they had prevented the company from hiring or discharging its workmen, and had obstructed the business of operating the mines to such an extent that in the opinion of the company it became necessary to either close them or get a new supply of laborers. Under these circumstances the company procured in the east between four and five hundred colored miners for the purpose of working the mines. It was evident from the situation that the former employes of the company would resist, or would most likely resist, any attempt to put the new miners in their place at the mines; and to guard against this a number of men from Thiel's Detective Agency were hired to protect the colored miners and the company's property. A number of guns and a few rounds of ammunition were also procured and distributed to the colored miners a short time before their arrival at Franklin in King county, the place where the injury subsequently occurred, and where

31-10W

some of said mines were located. Under these circumstances the colored miners were taken upon the company's property on May 16, 1891, in the immediate vicinity of the mines, and a substantial wire fence was erected around the entrance thereto, and around the company's store and other property ; the same being accomplished without any forcible resistance from the former employes, who were then living at Franklin in the vicinity of the mines, and who continued to live there—or at least the greater number of them—until after the injury to Mrs. Thorburn was inflicted, which occurred on Sunday, the 28th day of June, 1891.

During the time intervening between the arrival of the new miners and said June 28th, said miners were continually subjected to annoyances, insults and threats from the former miners, who were pretty generally armed and were organized into companies and were put through a military drill, including target firing, from day to day, near where the colored miners were at work, and in plain sight of them, presumably for the purpose of intimidating them and driving them away from the mines. Upon the arrival of the colored miners at Franklin, the guns and ammunition which had been previously distributed among them were taken from them and stored in the company's store house. The guards, however, who were known as the "Sullivan Guards," were maintained and kept there for the purpose of protecting the colored miners and the company's property, and to preserve the peace, and were under the control of a deputy sheriff of said county.

About one or two o'clock on the morning of said June 28th, the respondent company took a train load of the colored miners, with a number of the guards, from Franklin to Newcastle, where it was operating other mines, and where there was a strike in progress ; and on the evening of said day they were returned to Franklin. Previous to their return, during the day, a colored guard at Franklin had been shot, and was supposed to have been shot by some one of the former miners. Owing to this, the already strained situation had become greatly aggravated, and the colored

miners were much excited and more or less terrorized. It appears from the testimony that upon this Sunday in question most of the former miners were absent from their homes with their guns, and there was an attempt on the part of some of them, or members of their families, who were examined, to account for such absence on the ground that they had gone hunting on said day. As the train with the colored miners and guards aforesaid neared the depot at Franklin, on the return trip, a number of shots were fired. It is uncertain from the testimony whether they were first fired from the train or at the train; however, this is not very material. At the commencement of the firing the colored miners remaining at Franklin became intensely excited and rushed in a body to the company's store house, seized a quantity of the guns and ammunition stored there and joined in the firing, which then had become somewhat indiscriminate. During this time Mrs. Thorburn was shot while in her and her husband's residence. She claims the respondents should be held to answer in damages therefor on the following grounds: (1) That "they advised, counseled, aided and abetted the guards in what was done, furnished the arms and ammunition, and are equally guilty with the principals"; (2) That "under the allegations of the complaint and the proof upon the trial, the respondents are guilty because they furnished arms and ammunition to dissipated, drunken, irresponsible parties, who caused the injury."

After a somewhat lengthy examination of the two hundred pages of type-written testimony contained in the record, we find no testimony therein supporting either of such grounds; nor have the appellants in their brief specified any particular page or place in the record where any such testimony, substantially or inferentially supporting the same, may be found. It is apparent that at the time the injury occurred the colored miners remaining at Franklin were not engaged in their duties as employes of the company; and it clearly appears that the arms were not furnished them upon said occasion, but that they forcibly took possession

thereof. And it also appears that they had been repeatedly· instructed to avoid all difficulties with the former miners in every way, and to act only in self-defense. Furthermore, the guards at said mines were under the control and direction of a deputy sheriff of said county during the times in question, and it appears that the officers of the company did everything which they could well have done to prevent an outbreak, short of ceasing the operation of the mines and abandoning the company's property. There is no warrant, in the principles of a free government, or of justice, to hold the respondents liable for an injury inflicted under the circumstances proven, and the motion for a non-suit was rightly granted.

DUNBAR, C. J., and HOYT and STILES, JJ., concur.