### W. J. Lytle v. Crescent News and Hotel Company.

#### Decided January 22, 1902.

1.—Master and Servant—Assault by Servant—Scope of Employment—Master's Liability.

The master ran a lunch counter with an agent in charge, and plaintiff, having taken lunch there, paid for it, but was compelled by the starting of his train to leave before receiving back certain change due him. Some days later plaintiff, after again eating at the lunch stand and paying for his lunch, demanded the change theretofore due him, and the agent claiming that the change had already been returned, plaintiff charged him with taking the money, and the agent, with an oath, started to get over the counter. Plaintiff went out, and when just outside the door applied an insulting epithet to the agent, who then got a pistol and ran after plaintiff and shot him as he was getting on the train. Held, that the master was not liable for the injury, as the assault was not within the scope of the agent's employment and duty.

2.—Case Distinguished.

Railway v. LaPrelle, ante, page 496, distinguished.

Appeal from Bexar. Tried below before Hon. J. L. Camp.

*Samuel Belden, Jr.,* and *M. W. Davis,* for appellant.

*Newton & Ward,* for appellee.

FLY, Associate Justice.—This is a suit for damages instituted by appellant against appellee, alleged to have arisen from the acts of an agent of appellee in charge of a certain lunch counter in Schulenburg, Texas. After hearing the evidence introduced by appellant the court instructed a verdict for appellee.

The grounds of recovery stated in the petition were that D. E. Rhodes, the servant of appellee, whilst acting within the scope of his employment, had negligently shot appellant, and that the character and disposition of said Rhodes was so vicious and dangerous as to render it dangerous for appellant to pursue his business in Schulenburg.

The testimony established that appellant was a railway postal clerk, running between San Antonio and Houston, and sometime in June, 1900, when the train reached Schulenburg, he went to a lunch counter

conducted by D. E. Rhodes for appellee, to get something to eat. Rhodes handed him a piece of pie and appellant gave him 50 cents, out of which to get the 5 cents for the pie. Just as appellant got the pie, the train bell rang, and he ran to catch the train without getting his change. The next day appellant was going west from Houston, and took his dinner in the dining room adjoining the lunch stand, and, after eating, went to the lunch stand and asked Rhodes for the change he had left, and Rhodes said that appellant had gotten his change. Several days afterwards appellant went to the lunch stand, and after eating, again demanded the forty-five cents he had left. After talking for awhile, appellant charged Rhodes with taking the money, and Rhodes, with an oath, told him he would "fix him," and started to get over the counter. Appellant started out and when just outside the door applied a very opprobrious and insulting epithet to Rhodes, who then got a pistol and ran after appellant, and, as he was getting on the train, shot him in the leg. There was no testimony tending to show that Rhodes was of a violent or dangerous disposition, except that he shot appellant after he had charged him with theft and applied to him a vile epithet that always provokes intense resentment in this section of the country, and had invited him out to fight. It will be noted that the difficulty occurred several days after appellant lost his money, and after appellant had been waited on and had paid for his lunch. Rhodes at the time was not engaged in any service for his master, and the quarrel arose over a matter in which appellee did not have the least interest, or with which it was at all connected. Rhodes was not acting in furtherance of the master's business, or for the accomplishment of the object for which he was employed. He was resenting insults heaped on him by appellant; and while the remote cause of the difficulty was a matter connected with the business of appellee, it was too remote to connect appellee with it. "When a recovery is sought of the master for an injury inflicted by his servant, the plaintiff must show that the servant did the wrong while acting within the scope of his employment." Railway v. Anderson, 82 Texas, 516; Railway v. Cooper, 88 Texas, 607.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It is contended by appellant that the servant of appellee was acting within the scope of his employment when he shot appellant. The general and inflexible rule controlling in all such cases as the present is, as stated in Wood on Master and Servant, section 279, that for all acts done by the servant under the express orders or direction of the master, as well as for all acts done in the execution of his master's business, within the scope of his employment, the master is responsible, but when the act is not within the scope of his employment, or in obedience to

the master's orders, it is the act of the servant, and not the master, and the servant alone is responsible therefor.

If the foregoing rule is applied to the facts in this case it is clear appellee can not be held liable. It is not contended that Rhodes was acting under express orders of appellee when he shot appellant, and he was forwarding no part of his master's business when he fired the shot. He had collected the amount due for the food furnished appellant, and was not therefore engaged in collecting for the master. He was not protecting the property of the master, for no attack was being made. The difficulty arose from insults heaped upon the servant, with which the master could have no possible concern. No stretch of the doctrine that masters are liable for the torts of servants when committed within the scope of their employment can make it cover such a case as this. Candiff v. Railway, (La.), 7 So. Rep., 601; Turley v. Railway (N. H.), 47 Atl. Rep., 261.

In the last named case the appellant was shot by a servant of appellee employed to clean and care for the lamps in the freight yard. Appellant was trespassing on the yard and was fired upon and wounded by the servant, and it was said by the court: "As there was no evidence tending to show that the shooting of the plaintiff by Saxton resulted from any fault of the defendants, was directed by them or done by their authority, or was any part of Saxton's work of cleaning and caring for the lamps in the yard, and for which he was employed, and which was the sole capacity in which he represented the defendants, it can not be found that the act of Saxton complained of, whether willful on negligent, was the defendant's act, or within the scope of Saxton's employment by them."

The case of Railway v. La Prelle, ante, p. 496, decided by the Court of Civil Appeals of the Third District, is cited as being in conflict with the opinion herein expressed, but we are of the opinion that the cases are not at all similar. In that case a conductor made an assault on a passenger while on a train. In such cases it is held, by the weight of authority, that it is not merely a question of negligence, nor is it strictly a question depending upon the scope of the servant's particular employment, but is a question of the absolute duty of a railroad company to its passengers as long as the relation subsists, and a breach of that duty on its part whether caused by the willful act of an employe or not. As said by Elliott, in his work on railroads, section 1638: "A carrier is bound to discharge the implied duty, arising out of its contract and imposed by law, that its passengers shall be protected from injury by its servants, and shall not be willfully insulted and harmed by them, and if it commits the discharge of this duty to an employe it may well be held to do so at its peril, notwithstanding the exercise of care on its part in selecting its servants."

It is doubtless true that the words of provocation used by appellant did not justify the assault by Rhodes, but he was performing no service for appellee when he committed the assault, his action was without the

sanction of the master, and it was done at a time and place when appellee owed no duty whatever to appellant, and it is in nowise responsible for any damages arising from such assault.   Howe v. Newmarch, 94 Mass., 49.

As said in the case last cited: "And in an action of tort, in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders or doing his work.   So that if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable."

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.