[No. 11290.   Department Two.   December 27, 1913.]

MANZA MATSUDA, *Respondent*, v. JENNIE H. HAMMOND *et al.*, *Appellants.*[1]

EVIDENCE—RES GESTAE—ADMISSIBILITY.  Since the trial court may exercise a discretion in excluding matters pertaining to the *res gestae* which are not closely related to the principal fact in question, it is not reversible error in an action for assault and battery, to exclude evidence of plaintiff's conduct after the assault had been completed and defendant had started away.

NEW TRIAL—MISCONDUCT OF JURY—EXCESSIVE VERDICT—REMISSION. The trial court may grant a new trial, conditionally, unless part of an excessive verdict is remitted, even though it is found that, because of the size of the verdict, it was influenced by passion or prejudice.

MASTER AND SERVANT—LIABILITY FOR TORTS OF SERVANT—SCOPE OF EMPLOYMENT.  The general manager of a produce commission business acts outside of the scope of his employment, where, in attempting to collect for goods supposed to have been wrongfully taken, he committed an assault and battery upon a customer whom he charged with larceny.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered January 17, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort.   Affirmed as to one defendant; reversed as to the other.

*Frank H. Kelley* and *Ralph Woods*, for appellants.

*Edwin F. Masterson* and *John E. Owen*, for respondent.

FULLERTON, J.—This action was brought by the respondent against the appellants to recover damages for personal

[1]Reported in 137 Pac. 328.

injuries received in an assault and battery, committed upon the respondent's person by the appellant John Bell.

For sometime prior to the assault, the appellant Hammond conducted a produce commission business, in the city of Tacoma. The appellant Bell was her manager, and at the time of the assault had full charge of her business, Mrs. Hammond then being away from Tacoma on a visit to the eastern states. The respondent conducted a fruit and vegetable stall in the Tacoma public market. He traded somewhat extensively at Mrs. Hammond's place of business, always paying cash for the produce purchased. He was at her place of business on the evening preceding the day of the assault, making certain purchases, and when he left, the appellant Bell conceived the idea that he had carried away a crate of strawberries for which he had not paid. Bell told one of the deliverymen to call upon the respondent on his return that evening and demand payment for the crate. The deliveryman on his return reported that he was not able to collect the amount demanded, as the respondent denied taking the berries. The appellant Bell, on the next day, went himself to the respondent's place of business and demanded that the respondent pay for the berries, telling him that if he did not pay for them at once he would have him arrested for larceny. The respondent again denied taking the berries, and during the altercation which followed, Bell became abusive, whereupon the respondent told him to go away. Bell then struck him in the face with his fist, breaking his nose and causing it to bleed somewhat freely. After striking the blow, Bell immediately left the place, going back to his employer's place of business. The injury caused the respondent some suffering, kept him away from his place of business for some three weeks, and left his nose deformed.

On the trial of the action, the jury returned a verdict in the respondent's favor for the sum of $556. A motion for a new trial was filed, on the hearing of which the court held the verdict excessive, and gave the respondent an option to take

a judgment for $400 or submit to a new trial, reciting in its order that the verdict "appeared to have been given under the influence of passion and prejudice." The respondent accepted the first alternative, and judgment was entered in his favor for $400 against both appellants.

The appellants first assign that the court erred in the exclusion of evidence. A witness on behalf of the appellants testified that, after Bell had struck the respondent, the respondent picked up a paper rack on which there was a small roll of wrapping paper, when he was seized by some one standing near. On motion of the respondent, this evidence was withdrawn from the jury on the ground of immateriality. The appellants argue that it was a part of the *res gestae*, and hence its exclusion is error under all circumstances. But the rule is not thus broad. While matters pertaining to the *res gestae* are usually admissible, they must bear some material relation to the principal fact in question before it is error to exclude them. When they are not closely related, the court may exercise a discretion in their admission or exclusion, and its ruling will be reviewed for error only when it is evident that its ruling has operated to the prejudice of the complaining party. Under the facts disclosed by the record, we are unable to say that the court did not properly exercise its discretion in this instance. Prior to the commission of the act attempted to be shown, the assault and battery had been completed, and the appellant had started away from the scene. The respondent's subsequent conduct could hardly be so closely related to the principal question in issue as to make its exclusion reversible error.

It is next assigned that the court erred in refusing to set aside the verdict after it found that the verdict appeared to have been entered under the influence of passion and prejudice. Unquestionably the court could, without committing reversible error, have set the verdict aside and granted a new trial for the reason assigned; but, under our practice, it was not compulsory upon it to do so. From the order as a whole,

it is evident that the judge was led to the belief expressed in the order solely because of the size of the verdict, as he found no fault with the conclusion of the jury that the respondent was entitled under the evidence to some recovery. It was, therefore, within his province either to grant a new trial unconditionally, or to grant it on the condition that the respondent refused to accept a judgment in such sum as he conceived the jury were warranted in finding as compensation for the injury. In so far, therefore, as the judgment affects the appellant Bell, we find no reversible error in the record.

On behalf of the appellant Hammond, the additional contention is made that the appellant Bell, when he assaulted and beat the respondent, was not acting within the scope of his authority. This contention, we think, is well founded. The authority of Bell, as shown in the record, was to act as general manager of Mrs. Hammond's business. This grant of authority would unquestionably authorize Bell to make collections for goods sold from her place of business, and to exact settlements for goods wrongfully taken therefrom; but it would not, without something more, render her liable for unlawful acts of Bell committed while making such collections or settlements. An employer is liable for the unlawful and criminal acts of his employee only when he directly authorizes them, or ratifies them when committed; or, perhaps, continues an employee in his employment after he has knowledge that the employee has committed, or is liable to commit, unlawful acts while in the pursuit of his employer's business. The liability does not arise from a mere contract of employment to do a legitimate and lawful act.

In *Johanson v. Pioneer Fuel Co.*, 72 Minn. 405, 75 N. W. 719, the corporation owned a coal dock in the city of Duluth, where it stored, cared for, and handled coal, which, in the course of its business, it sold to its customers. It employed a person to attend to its business at the dock, and the employee sold a ton of coal to a purchaser, who took a part of it away at two different times. When the purchaser returned

for the remainder, the employee charged him with having pro-
cured larger sacks than he had at first used, and of wrong-
fully attempting thereby to obtain more coal than he was
entitled to.   This the purchaser denied, whereupon the em-
ployee became enraged and assaulted and beat the purchaser.
The assault and beating was held to be an independent tort
on the part of the employee, not within the scope of his em-
ployment, and one for which the employer was not liable.   In
the course of the opinion, the court said:

"The time and place of the transaction in this case do not
constitute the test of the master's liability.   In order to hold
the master liable, the act causing the injury must pertain to
the duties which the servant was employed to perform.   When
the relation of master and servant ceases, all liability for the
act of the persons employed ceases also.   Wood, Mast. & Serv.
538.   And the test of liability of the master depends upon the
question whether the injury was committed by the authority
of the master, expressly conferred or fairly implied from the
nature of the employment and the duties incident to it.   Id.
535.   We hold that the assault by McKee upon plaintiff was
an independent tort, for which the Pioneer Fuel Company was
in no way liable, that the bald statement in the complaint that
it was done by the servant while in the course of his employ-
ment is not, taken in connection with the other facts stated
in the complaint, sufficient to charge the master.   *Campbell
v. Northern Pac. R. Co.*, 51 Minn. 488, 53 N. W. 768."

In *Collette v. Rebori*, 107 Mo. App. 711, 82 S. W. 552,
Rebori employed one Sansone as his agent for collecting bills.
An account against Collette which Collette disputed was given
him to collect.   In endeavoring to make the collection, the
agent got into an altercation with the debtor, during the
course of which he assaulted and beat him.   It was held that
the employer was not liable, the court saying:

"The best considered cases hold that the master is liable to
third persons for the negligent, fraudulent or tortious acts of
his agent or servant when it is shown that the agent or serv-
ant was acting within the scope of his employment and that
the act complained of was done as a means or for the purpose
of doing the work assigned him by the master.   To assault

and beat a creditor is not a recognized or usual means resorted to for the collection of a debt, nor is it one likely to bring about a settlement of a disputed account. The evidence shows that when the plaintiff returned to the store for the purpose (as he says) of amicably settling the disputed account and made known to Sansone his purpose, Sansone did not take up the settlement of the account with him, but without the least provocation assaulted and beat him, not for the purpose of settling or collecting the account, but to gratify his private malice against the plaintiff. He was not, therefore, about his master's business nor acting within the scope of any authority delegated to him by defendant. For these reasons the rule of *respondeat superior* does not apply."

To the same effect are the cases of *Meehan v. Morewood,* 52 Hun 566; *Lytle v. Crescent News & Hotel Co.,* 27 Tex. Civ. App. 530, 66 S. W. 240; *Murphy v. Buckley-Newhall Co.,* 151 App. Div. 520, 136 N. Y. Supp. 309; *Brown v. Boston Ice Co.,* 178 Mass. 108, 59 N. E. 644, 86 Am. St. 469. See, also, from this court: *Thorburn v. Smith,* 10 Wash. 479, 39 Pac. 124; *Linck v. Matheson,* 63 Wash. 593, 116 Pac. 282.

Cases cited from this and other courts, holding common carriers liable for assaults committed upon the persons of passengers by the carrier's employees while in the course of transportation, rest on a different principle and are not in point. Carriers owe to their passengers the nondelegable duty of protecting them, not only from assaults by their own employees, but from the assaults of persons generally. The rule rests upon principles of public policy, not on the relation of employer and employee. On the same principle, our own case of *Chase v. Knabel,* 46 Wash. 484, 90 Pac. 642, 12 L. R. A. (N. S.) 1155, is distinguished from the case at bar.

The cases cited holding an employer liable for the acts of an agent employed to retake articles sold on conditional bills of sale, which have not been paid for according to the contract of sale, are not so easily distinguished on principle. The liability seems to be made to rest on the peculiar character of the employment, which, from its nature, is liable to create disputes and consequent breaches of the peace. But without

specially reviewing the cases, we think they may be regarded as exceptions to the general rule announced, rather than as establishing a contrary rule.

The judgment is affirmed as to the appellant Bell, and reversed and remanded with instructions to dismiss as to the appellant Hammond.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.