[No. 14934.   Department One.   November 27, 1918.]

JOHN DE LEON, *Respondent*, v. DOYHOF FISH PRODUCTS
COMPANY, *Appellant*.[1]

MASTER AND SERVANT (122-1—129)—ACTIONS — COMPLAINT — AS-
SAULT BY SERVANT. A complaint for assault upon an employee by
the master's superintendent fairly raises the question whether he
was at the time acting within the scope of his employment, where
it is alleged that acting as superintendent, with power of super-
vision over the men, he accosted plaintiff while employed, falsely
accused him of inciting a strike, and wantonly and maliciously
struck him.

SAME (172, 174-1)—ASSAULT BY SERVANT—LIABILITY—SCOPE OF
EMPLOYMENT. Where a superintendent was placed in charge of a
distant cannery with general power to maintain discipline at his own
discretion, which he abused in the exercise of his authority, when
he lost his temper and committed a malicious assault upon an
employee whom he sought to discipline, the master is liable.

DAMAGES (79)—EXCESSIVE DAMAGES—PASSION OR PREJUDICE. A
verdict for $1,000 for a malicious assault by a servant does not
alone reflect passion or prejudice where plaintiff was painfully
injured.

Appeal from a judgment of the superior court for
King county, Hall, J., entered March 11, 1918, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action in tort. Affirmed.

*Bogle, Merritt & Bogle,* for appellant.

*Benj. S. Ohnick* and *Van C. Griffin,* for respondent.

CHADWICK, J.—The appellant conducts a cannery at
Scow Bay, Alaska. One James H. Scott was superin-
tendent. Respondent worked at the cannery during
the season of 1917. He was under the immediate direc-
tion of a Chinese boss. It was the duty of the super-
intendent to look after the general conduct of the bus-
iness; to have general charge over labor and of pro-
duction; to maintain discipline and quell strikes or

[1]Reported in 176 Pac. 355.

any uprisings that occurred at the cannery. The cannery was situate at such a distance from the home office, which is in Seattle, that it was oftentimes, if not altogether, necessary to allow Scott a broad discretion, and in such matters the policy of the company was entirely in his hands. Prior to the 21st day of June, there had been some discontent among the workmen. They had betrayed an independence of authority. They had "murmured against the good man of the house." On that day the respondent, who had been, or was suspected of, breeding strife and inciting the crew to strike, was taken to the superintendent, at his request, by the Chinese foreman. Scott wanted to "get a look at him," "find out who he was," and "set the fellow right." Respondent's story is:

"The Chinese boss called me, telling me that the superintendent of the cannery wants to see me, so I followed him and he brought me to the company's store. When I entered down there I didn't see the superintendent of the cannery, but the storekeeper was present, and that storekeeper told me to wait for Mr. Scott. I waited four or five minutes and still Mr. Scott, the superintendent, wasn't come. So I went outside in the porch and picked up a small piece of wood, and then opening the small blade of my knife I began whittling, at the same time smoking a pipe. In about three minutes I heard the voice of the superintendent inside the store calling me in, and saying, 'Hey there, come here.' He was very mad. I came in the store and stood there in front of him, and he said, 'What is your name—where have you worked before?' I said to him, 'I have worked at the Deer Harbor cannery.' He said, 'What are all those things in your hand?' I put all those things, a pipe, and a small knife and piece of wood on the counter, and he said, 'So you came down here to make trouble, making these boys strike.' 'No sir,' I said to him, 'I came down here to make a little money so as to go to college.' Then Mr. Scott said, 'We don't want these things to happen again down here; if I

ever see you again doing this thing I will knock your God damn head off.' I said, 'I can't understand this thing, let me explain.' Then he rushed forward toward me and with his fist struck me on this right eye, making two great cuts, wide open, and the blood running profusely on my jumper and causing me great pain. Then I was down there trying to wipe it off and he said, 'You go down to the bunk house,' and I went down to the bunk house.''

Scott's version of the occurrence is as follows:

''When he first came in I asked him what cannery he had worked at. He told me and I asked him why he didn't do what the Philippino boss and the China boss instructed him to do. I think I continued asking a question before he really had a chance to answer that, by asking him why he was causing trouble among the boys. He answered me, saying, 'Here, Mr. Scott, I don't want any trouble with you.' I said, 'Put away that knife,' and he continued whittling. He was standing exactly at the corner of the counter, and I was not in a position where I could use my right hand to strike him. He threw his shoulder over to one side and his hand down. I reached over and grabbed the knife and held it there and said, 'Now, drop that.' He tried to raise the knife and I hit him. I hit him only once. After that I told him to go down to the bunk house and see if he couldn't behave himself and not cause any more trouble to the bosses. I think that is in substance practically all the conversation that occurred between us.''

The justification for the assault suggested in Scott's testimony was not plead as a defense, but the court submitted the issue to the jury, and the verdict of the jury upon that issue being adverse to appellant, the case presents itself to this court as one upon the general issue, whether the superintendent was acting within the scope of his employment at the time he committed the assault.

The first error assigned is that the complaint does

not state a cause of action. It is contended that the time and place of the assault does not constitute a test of the employer's liability, and that the employer cannot be held liable unless it is found that the employee was, at the time of committing the wrongful act complained of, performing some duty for which he was employed. It is alleged that Scott was the superintendent of the cannery and, as such superintendent, had supervision of the cannery and men employed at the cannery, including plaintiff; that the superintendent, acting on behalf of respondent, accosted plaintiff while employed at the cannery and falsely accused him of inciting other employees at the plant to strike, and had used vile, abusive and insulting language of and toward respondent, and thereupon wantonly and maliciously struck him, etc.

While the complaint might have been drawn in more exact terms, we are convinced that enough was plead to put the appellant to its defense. It fairly raises the question whether the superintendent was at the time engaged in the furtherance of his master's business. The legal conclusion that he was so engaged would not have aided the complaint. To a certain extent, service implies responsibility, and the allegation that the servant had supervision of the men employed was enough to put appellant to its answer. A showing that the servant was not so engaged, or that the assault was to accomplish a purpose personal to the servant, would be a complete defense.

All other assignments of error go, save one, to the sufficiency of the testimony to sustain the verdict.

When a party is sued for assault and battery by his servant upon another, liability must depend either upon proof of an express direction, or upon such facts and circumstances as will imply direction or authority,

and this inference may be drawn by the jury from competent attending facts and circumstances; and if a servant is engaged in the discharge of his duties to the master and is acting for the betterment or well-being of his business, and in so doing wantonly or maliciously injures another, the master is liable to the person so injured. Having given its servant general power to maintain discipline within the bounds of his own discretion, the appellant made itself, under the elementary principles of the law, liable for an abuse of that power. The superintendent was transacting the business of the master when he called respondent to his presence, and the superintendent undoubtedly assumed that he was doing the will of his master when he talked to the respondent and called him to account for what he understood that he had been doing. His object was to promote the welfare of his master's property, and all witnesses agree that the means employed were effective, for there was no further trouble of any kind. In the performance of that which was proper and justified by the circumstances, and to serve no purpose of his own, and without any justification, as the jury has found, the servant allowed his passion to overcome him and maliciously assaulted the respondent.

It would carry the law beyond its legitimate limits to hold that an employee, a third party, must assume the hazard of an abuse of discretion on the part of the overseer and submit without remedy to a blow, whether given in argument as persuasion, or by way of emphasis.

The fault of appellant's reasoning lies in the fact that it has not distinguished between the specified duty of a servant; that is, one who is engaged to do a particular thing in a particular way and which may be very limited, and the scope of a servant's employment

under a general authority and discretion to accomplish a certain result, which in this case, within the fair inferences of the testimony, was to keep the peace as between the crew of workmen and the appellant.

"The specified duty of an employer in such a case may be very limited, but the scope of the employment is as broad as the obligations the master has assumed." *Lakin v. Oregon Pac. R. Co.*, 15 Ore. 220, 15 Pac. 641.

And when a servant goes outside of his employment and wantonly inflicts an injury upon a third person to whom the master owes no duty, the servant is the principal and the employer will not be liable; but where the master has given a servant a general authority, and in the exercise of that authority the servant negligently or maliciously injures another, the act complained of was done in the course of his employment, and,

"the master . . . . will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, and inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another." *Rounds v. Delaware L. & W. R. R. Co.*, 64 N. Y. 129, 21 Am. Rep. 597.

See, also, *Waaler v. Great Northern R. Co.*, 22 S. D. 256, 117 N. W. 140, 18 L. R. A. (N. S.) 297.

We are aware that there is a distinction between cases brought against a common carrier, which owes

a greater duty to passengers than a master engaged in private business owes to his employees or to third parties, but it will be noticed by references to the cases just cited that the complaining parties did not bear the relation of passenger to carrier. A recovery was allowed under the general principle of responsibility for an abuse of discretion lodged by the master in the servant. Cooley, Torts (3d ed.) ch. 18; Labatt, Master and Servant (2d ed.) § 2361 *et seq.* While holding the master not liable in the particular case, the rule here governing was recognized by the late Judge Morris in *McQueen v. People's Store Co.,* 97 Wash. 387, 166 Pac. 626.

When the servant is authorized to do the act, the master is liable for its performance. He cannot excuse himself because an authorized act was improperly or unlawfully performed. In other words, so long as the thing the servant is doing is in the furtherance of the master's business, the master must answer for the manner in which the act was done. These and similar statements of the law form the basis of our holdings in *Robinson v. McNeill,* 18 Wash. 163, 51 Pac. 355; *Jones v. Hoge,* 47 Wash. 663, 92 Pac. 433, 125 Am. St. 915, 14 L. R. A. (N. S.) 216; *Linck v. Matheson,* 63 Wash. 593, 116 Pac. 282; *Matsuda v. Hammond,* 77 Wash. 120, 137 Pac. 328, 51 L. R. A. (N. S.) 920; and *Bursch v. Greenough Brothers Co.,* 79 Wash. 109, 139 Pac. 870.

The case of *Matsuda v. Hammond,* 77 Wash. 120, 137 Pac. 328, 51 L. R. A. (N. S.) 920, is relied on by appellant, but it is not contrary to our present holding. As there said, the general liability of the master to answer for the tort of a servant rests in the peculiar character of the employment, which, from its nature, is liable to create disputes and consequent breaches of the peace. It was so in this case, the authority of the superintendent to maintain discipline

and to exercise a general discretion in the performance of his duty excepts the case from the rule in the *Matsuda* case and brings it within the exception there noticed.

The jury returned a verdict for $1,000. The respondent was painfully injured. The assault was malicious, and we are unable to say from the size of the verdict alone that it reflects any passion or prejudice on the part of the jury.

Affirmed.

MAIN, C. J., TOLMAN, MITCHELL, and MACKINTOSH, JJ., concur.