[No. 7166–9–III.  Division Three.  October 16, 1986.]

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL No. 1052, *Respondent,* v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant; Thomas O. Lampson, City Attorney,* and *Nancy Williams, Assistant,* for appellants.

*David E. Williams* and *Critchlow & Williams,* for respondent.

GREEN, C.J.—On October 12, 1981, the International Association of Firefighters Local 1052 (Union) filed a petition with the Public Employment Relations Commission seeking to represent the battalion chiefs' bargaining unit of the Richland Fire Department. The Commission denied the Union's petition and the Union appealed to Benton County Superior Court. The court reversed the Commission and directed it to process the petition. The Commission and the City of Richland appeal. The Union's right to represent the battalion chiefs' bargaining unit presents the sole issue on appeal.

Local 1052 is currently the exclusive bargaining representative of the unit made up of nonsupervisory fire fighters employed by the City of Richland. We previously upheld the Commission's decision that the battalion chiefs, because of their supervisory status, should be placed in a bargaining unit separate from their nonsupervisory employees. *International Ass'n of Fire Fighters, Local 1052 v. Public Empl. Relations Comm'n,* 29 Wn. App. 599, 630 P.2d 470, *review denied,* 96 Wn.2d 1004 (1981). Subsequently, the Union filed a petition to be the exclusive bargaining agent for the newly created unit of battalion chiefs.

At the hearing on this petition, the following facts were presented. One of the battalion chiefs was president of Local 1052 and another chief was a member of its executive board and vice president and district representative of the Washington State Council of Firefighters Federation, with

which Local 1052 is affiliated. The battalion chiefs have a wide range of supervisory responsibilities and also act on behalf of the Union in representing the nonsupervisory employees in labor disputes with their employer. Based upon this testimony, the Commission's executive director found that "[a] clear and present danger exists of a conflict of interest within Local 1052 so long as its leadership includes persons acting on behalf of the employer as supervisors of nonsupervisory employees represented by Local 1052." The director concluded that because Local 1052's leadership is dominated by supervisors, it is incapable of dealing at arm's length with the City of Richland as exclusive bargaining representative of both supervisory and nonsupervisory units, and, thus, is disqualified from acting as a representative of both units. The executive director's decision was affirmed by the Commission. Subsequently, on review the Superior Court overturned the Commission's decision on the basis the Commission exceeded its authority and was clearly erroneous as a matter of law. The Commission asserts this ruling was error.

It is the Union's position the Commission does not have the authority to determine the appropriateness of the bargaining representative. To the contrary, the Commission argues RCW 41.56.050 gives the Commission authority to intervene in the event a public employee and public employer are in disagreement as to the selection of a bargaining representative.

■ It is true, as the Commission contends, that RCW 41.56.050 allows it to intervene in the event the employer and employees disagree as to the selection of the bargaining representative as provided in RCW 41.56.060 –.090. However, the Commission's intervention is limited. RCW 41.56-.060 provides:

The commission, after hearing upon reasonable notice, shall decide in each application for certification as an exclusive bargaining representative, the *unit appropriate* for the purpose of collective bargaining. In determining, modifying, or combining the bargaining unit, the com-

mission shall consider the duties, skills, and working conditions of the public employees; the history of collective bargaining by the public employees and their bargaining representatives; the extent of organization among the public employees; and the desire of the public employees. The *commission shall determine the bargaining representative by (1) examination of organization membership rolls, (2) comparison of signatures on organization bargaining authorization cards, or (3) by conducting an election specifically therefor.*

(Italics ours.) The Commission and the City contend the Commission may determine the appropriateness of the bargaining representative applying the considerations listed in the statute, including the duties, skills, working conditions of the employees, the history of collective bargaining, extent of prior organization and the desire of the employees. They go on to argue the desire of the battalion chiefs must be balanced against these other considerations, and, on balance, the rights of the nonsupervisory fire fighters are jeopardized by allowing the Union to represent both units. We disagree with this interpretation of RCW 41.56.060.

The considerations listed in this statute and relied upon by the Commission are to be used in determining the appropriate bargaining unit, not the representative. The statute expressly states the Commission shall determine the bargaining representative by examining the membership rolls, comparing the signatures on the authorization cards or by conducting an election. This statute clearly gives the Commission the authority to determine whether the bargaining representative has met the certification requirements, but it does not grant it authority to determine whether the representative is appropriate.

Next it is contended the court should look to federal law to resolve the issue presented and although not controlling, it has been considered persuasive by our courts. *State ex rel. Wash. Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 67–68, 605 P.2d 1252 (1980). The Commission relies on *NLRB v. Jones & Laughlin Steel Corp.,* 331 U.S. 416, 422, 91 L. Ed. 1575, 67 S. Ct. 1274 (1947), where the

Court stated:

The Board, of course, has wide discretion in performing its statutory function under § 9 (b) of deciding "the unit appropriate for the purposes of collective bargaining. . . ." It likewise has discretion to place appropriate limitations on the choice of bargaining representatives should it find that public or statutory policies so dictate.

(Citation omitted.) The Commission and the City point out that historically unions led by supervisors are denied certification. That is true. Supervisors' identification with their employer has been characterized as an unfair labor practice because of the prohibition against employer domination of an employee organization. *Detroit Ass'n of Plumbing Contractors v. Duffy*, 126 N.L.R.B. 1381 (1960); *Douglas Aircraft Co. v. Local 1652, Int'l Ass'n of Machinists*, 53 N.L.R.B. 486 (1943). This position is understandable, given the fact that under the National Labor Relations Act (NLRA), supervisors have been carved out of the act and not allowed to collectively bargain because of their identification with their employer. 29 U.S.C.A. § 152(3), (11). Thus, under federal law the participation of supervisors in the internal affairs of the union disqualifies it as a bargaining representative if a "clear and present danger" of a conflict of interest which compromises the labor organization's bargaining integrity is proven. *Sierra Vista Hosp., Inc. v. California Nurses' Ass'n*, 241 N.L.R.B. 631 (1979).

However, under our state act, supervisors are recognized as employees and granted the authority not only to belong to a union, but the right to collectively bargain. *International Ass'n of Firefighters, Local 469 v. Yakima*, 91 Wn.2d 101, 587 P.2d 165 (1978); *Metropolitan Seattle v. Department of Labor & Indus.*, 88 Wn.2d 925, 568 P.2d 775 (1977). Consequently, our courts have not followed the interpretation given the federal act in deciding whether supervisors should be denied the right to collectively bargain. *Metropolitan Seattle v. Department of Labor & Indus., supra.* In fact, the two acts reflect different concerns. The NLRA reflects the concern with the authority a

supervisor exercises over other employees and a possible conflict of interest with management, whereas our act focuses on the nature of the relationship between the employee and the employer; only those employees designated "confidential" are subject to exclusion under our act. *Metropolitan Seattle,* at 929–30.

Given the significant difference in which the two acts treat supervisors, we do not find the federal approach persuasive. Some states presented with this issue have dealt with the problem legislatively. Minnesota has provided by statute that the same union may represent both supervisors and nonsupervisory employees as long as they bargain separately with the employer, *County of Washington v. American Fed'n of State, Cy. & Mun. Employees, Coun. 91,* 262 N.W.2d 163 (Minn. 1978), whereas California has legislated the opposite. *Los Angeles Comm'ty College Dist. v. Public Empl. Relations Bd.,* 121 Cal. App. 3d 389, 175 Cal. Rptr. 223 (1981).

The fact our Legislature has failed to address this issue does not give this court judicial authority to speak. We are limited to interpreting what the Legislature has enacted. To that end, we look to the purpose of the public employees collective bargaining act which is to promote the continued improvement of the relationship between public employees by implementing the "right of public employees to join labor organizations of their own choosing . . ." RCW 41.56.010. The Legislature mandates that no employer shall interfere with, restrain, coerce or discriminate against any public employee or group of employees in the "free exercise of their right to organize and designate representatives of their own choosing . . ." RCW 41.56.040. It has been held the act is to be liberally construed in order to implement the free exercise of these rights. *International Ass'n of Firefighters, Local 469 v. Yakima, supra* at 109. We note the federal courts recognize these rights to be fundamental with their roots in the First Amendment, *Elrod v. Burns,* 427 U.S. 347, 362–63, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976); *NLRB v. Jones & Laughlin Steel Corp.,*

301 U.S. 1, 33–34, 81 L. Ed. 893, 57 S. Ct. 615, 108 A.L.R. 1352 (1937), and the public policy which favors the free choice of employees to choose their bargaining agent. *NLRB v. David Buttrick Co.*, 399 F.2d 505, 507 (1st Cir. 1968).

Given the provisions of our act and the fundamental difference between it and the federal act in the treatment of supervisors, we conclude the Commission exceeded its statutory authority by denying the battalion chiefs the right to choose Local 1052 as its bargaining representative.

Affirmed.

MUNSON and THOMPSON, JJ., concur.

Review denied by Supreme Court March 3, 1987.