[No. 12353-7-III.   Division Three.   August 12, 1993.]

RONALD L. MASON, *Appellant,* v. KENYON ZERO STORAGE, *Respondent.*

6

*Alex J. Skalbania* and *Critchlow, Williams, Schuster, Malone & Skalbania,* for appellant.

*Matthew E. Swaya* and *Lane Powell Spears Lubersky,* for respondent.

SHIELDS, J.[*] — Ronald L. Mason appeals the summary judgment dismissal of his intentional tort claim against Kenyon Zero Storage, based on the actions of Kenyon employee Lonnie Barrett. He contends his evidence created genuine issues of material fact. We agree, reverse and remand for trial.

On April 24, 1986, Lonnie Barrett assaulted Ronald Mason. He drove a forklift truck with a drum on it into Mr. Mason's back, pinning him against another drum Mr. Mason was cleaning. Mr. Mason suffered permanent back injuries as a result. At the time, both men were working at a warehouse operated by Kenyon. Mr. Mason was a forklift operator; Mr. Barrett had for years been the "lead person" on the forklift crew, though he was demoted to forklift operator sometime around the assault. There was conflicting evidence as to whether Mr. Barrett's demotion occurred before or after the assault.

Mr. Mason sued Kenyon pursuant to RCW 51.24.020,[1] alleging his "employer" had acted with deliberate intent to

---

[*]Judge George T. Shields was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1]RCW 51.24.020 provides:

"If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall

cause him grave and serious injury. Mr. Mason also joined Mr. Barrett personally.

Kenyon moved for partial summary judgment dismissing all claims against it. Kenyon filed two affidavits alleging that Mr. Barrett had been demoted from lead person some 2 weeks before the assault, and Mr. Mason knew of the demotion. Kenyon's affidavits alleged that lead persons were part of the same collective bargaining unit as forklift operators, they earned only 42 cents per hour more than forklift operators, and their duties were limited: they could not hire, fire, or impose formal disciplinary sanctions. Mr. Mason responded with three affidavits alleging that Mr. Barrett as a lead person often rammed employees with a forklift as a way of enforcing discipline on the job.

The court granted partial summary judgment and dismissed the claim against Kenyon, concluding (1) Mr. Barrett was not a lead person at the time; (2) even if he were a lead person, he acted outside the scope of his employment; and (3) he was not an employer under the statute.[2] Mr. Mason moved the court to reconsider or to certify for immediate appeal under CR 54(b). The court denied reconsideration and certified the issues, which concern only Kenyon, for immediate appeal to this court.

■ We review the trial court's summary judgment as follows:

> An appellate court reviews de novo a trial court's summary judgment decision. The appellate court analyzes whether any genuine issues exist as to any material fact and whether one

---

have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title."

[2]Under RCW 51.24.020, employers' liability for supervisors' acts is premised on established rules of vicarious liability, not on whether the supervisor meets the definition of an employer. *Newby v. Gerry*, 38 Wn. App. 812, 816 n.2, 690 P.2d 603 (1984). *See Perry v. Beverage*, 121 Wash. 652, 658, 209 P. 1102, 214 P. 146 (1922). Therefore, the trial court's third conclusion was in error, and will not be discussed further.

party is entitled to judgment as a matter of law. The court "consider[s] all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party". Any doubts as to the existence of factual disputes must be resolved against the moving party.

. . . .

. . . Summary judgment is proper on a factual issue only if reasonable minds could reach but one conclusion on it.

(Citations omitted.) *Bohn v. Cody*, 119 Wn.2d 357, 362-63, 832 P.2d 71 (1992); *see* CR 56(c). The issues material to Mr. Mason's cause of action are set forth below.

Although the Industrial Insurance Act abolishes most causes of action for personal injuries suffered by workers on the job, workers still have a cause of action against employers if the "injury results to a worker from the deliberate intention of his or her employer to produce such injury . . .". RCW 51.24.020.

Under RCW 51.24.020, an employer is liable for its supervisor's intentional tort if the supervisor was acting within the scope of his or her employment at the time of the tort and the supervisor deliberately intended to injure the victim. *Perry v. Beverage*, 121 Wash. 652, 209 P. 1102, 214 P. 146 (1922); *Hardy v. State*, 38 Wn. App. 399, 400, 685 P.2d 610 (1984). Mr. Barrett's deliberate intent is not disputed. Thus, in order to establish a cause of action under RCW 51.24.020, Mr. Mason must establish (1) Mr. Barrett was the lead person on the forklift crew at the time of the incident; (2) as a lead person, Mr. Barrett was Mr. Mason's supervisor; and (3) Mr. Barrett acted within the scope of his authority.

To prevail on summary judgment, the moving party bears the burden of showing the absence of a genuine issue of material fact. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 395, 823 P.2d 499 (1992). In this case, Kenyon bears the burden; it has failed to meet that burden.

We first consider whether Mr. Barrett was a lead person on April 24, 1986. Mr. Mason's evidence, viewed in a light most favorable to him, does raise a genuine issue on this

point. In deposition, Mr. Barrett conceded he was a lead person on the date of the injury:

Q: Let me ask you next: When did you stop being a lead man for Kenyon?

A: In 1986, around May 1 or somewhere in that area, I went to the hospital . . .

. . . .

A: . . . Second, third, fourth, something like that. That's when I discovered I had this problem.

Q: At the time when you went to the hospital in early May, you were still a lead man at that point; is that correct?

A: That's correct.

The affidavits of Wes Underwood, Jim Ehart, and Mr. Mason also state that Mr. Barrett was definitely the lead person, and the employees considered him to be acting in that capacity, at the time of the injury.

■ Although Kenyon's affidavits state the general manager demoted Mr. Barrett during a conversation on April 7, 1986, that statement merely contradicts the statements of the three employees. It is for the jury to decide the issue when such contradictory evidence exists.

■ We next consider whether Mr. Barrett, if a lead person, was Mr. Mason's supervisor. In assessing that question we look to the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* for guidance. While not controlling, decisions under the NLRA are persuasive in construing state labor acts which appear to be based on or similar to the federal act.[3] *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 432, 730 P.2d 653 (1986); *Ollie v. Highland Sch. Dist. 203*, 50 Wn. App. 639, 642, 749 P.2d 757, *review denied*, 110 Wn.2d 1040 (1988).

■ Exclusion from collective bargaining is one indicator a person may be a supervisor. Under the NLRA, employees

---

[3]In one limited situation, Washington has not accepted the federal interpretation. *International Ass'n of Firefighters, Local 1052 v. Public Empl. Relations Comm'n*, 45 Wn. App. 686, 690, 726 P.2d 1260 (1986), *review denied*, 107 Wn.2d 1030 (1987). Public employees who are supervisors may join collective bargaining units under the Public Employees' Collective Bargaining Act, RCW 41.56, though the federal law is generally to the contrary. *International Ass'n of Firefighters, Local 469 v. Yakima*, 91 Wn.2d 101, 587 P.2d 165 (1978).

are given the right to collectively bargain, but supervisors[4] are specifically excluded. 29 U.S.C. §§ 152(3), 157 (1988). Under the NLRA, lead persons with only routine, minor supervisory duties, and who earn only a few cents per hour more, are not necessarily "supervisors". *Laborers & Hod Carriers Local 341 v. NLRB*, 564 F.2d 834, 838, 54 A.L.R. Fed. 65 (9th Cir. 1977); *NLRB v. Doctors' Hosp. of Modesto, Inc.*, 489 F.2d 772, 776 (9th Cir. 1973); *NLRB v. Griggs Equip., Inc.*, 307 F.2d 275, 279-80 (5th Cir. 1962). However, the federal decisions hold that this determination in every case is a question of fact. *Griggs*, at 279. *See Hod Carriers*, 564 F.2d at 838; *Doctors' Hosp.*, 489 F.2d at 776.

Mr. Mason's affidavits indicate that as of April 24, 1986, Mr. Barrett's duties included: maintaining order and discipline within the crew; enforcing company rules; assigning daily tasks; ensuring those tasks were performed properly on a day-to-day basis; breaking up fights on the crew; and correcting substandard job performance. They also indicate Mr. Barrett had used ramming by forklift as a disciplinary tool among crew members, including Mr. Mason, on numerous occasions before the injury.

Although Kenyon's affidavits indicate lead persons were part of the collective bargaining unit, were paid only 42 cents per hour more than forklift operators, and had no authority to hire, fire, or send out formal disciplinary letters, this evidence merely joined the issue; it did not resolve it. Viewed in a light most favorable to Mr. Mason, the evidence raised a genuine issue whether Mr. Barrett was a supervisor.

Finally, we consider whether Mr. Barrett, if a lead person and a supervisor, committed the assault while acting within

---

[4]The NLRA, 29 U.S.C. § 152(11), defines a supervisor as: "[A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

the scope of his employment. Normally, whether a supervisory employee acts within the scope of employment is a jury question, and can only be resolved on summary judgment if "there can be only one reasonable inference from the undisputed facts . . .". *Hardy*, at 401.

■ Whether an act falls within the scope of employment depends on proof of the master's express direction, or on facts and circumstances which imply direction or authority. *De Leon v. Doyhof Fish Prods. Co.*, 104 Wash. 337, 340, 176 P. 355 (1918). If a master gives a servant general power to maintain discipline within the bounds of the servant's discretion, the master makes itself liable for an abuse of that power. *De Leon*, at 341. *See Perry*, at 658.

The *De Leon-Perry* rule focuses on torts which a supervisory employee inflicts on co-worker employees. Thus, the legal test for liability is distinct from the line of cases in which employers have been held liable for employees' torts inflicted on nonemployee third parties.[5]

In cases involving supervisors' intentional torts on co-workers, the general rule has been laid down as follows:

> [T]he general liability of the master to answer for the tort of a servant rests in the peculiar character of the employment, which, from its nature, is liable to create disputes and consequent breaches of the peace. . . . [I]n this case, the authority of the superintendent to maintain discipline and to exercise a general discretion in the performance of his duty excepts the case from the rule in the *Matsuda* [*v. Hammond*, 77 Wash. 120, 137 P. 328 (1913)] case and brings it within the exception there noticed.

*De Leon*, at 343-44. *See Perry*, at 658-59. The master who puts the servant in a place of trust is justly held responsible when the servant, through lack of judgment, infirmity of temper, or under the influence of passion aroused by the

---

[5]This second line of cases includes *Kyreacos v. Smith*, 89 Wn.2d 425, 429, 572 P.2d 723 (1977); *Langness v. Ketonen*, 42 Wn.2d 394, 255 P.2d 551 (1953); *Brazier v. Betts*, 8 Wn.2d 549, 558-59, 113 P.2d 34 (1941); *Matsuda v. Hammond*, 77 Wash. 120, 137 P. 328 (1913); and *Kuehn v. White*, 24 Wn. App. 274, 277, 600 P.2d 679 (1979).

occasion, goes beyond the strict line of duty and inflicts an unjustifiable injury. *De Leon*, at 342.

On the other hand, the master is not liable when a servant steps aside from the master's business in order to effect some purpose of his or her own; a supervisor's intentional actions directed toward a subordinate, occasioned solely by jealousy, hatred, or other ill feelings, are not, as a matter of law, within the scope of employment. *Hardy*, at 401.[6]

Viewed in the light most favorable to Mr. Mason, the evidence does not indicate that Mr. Barrett's actions were occasioned solely by ill will, because the evidence could sustain the reasonable inference that Mr. Barrett's acts took place in a familiar disciplinary context, used to further the work of the employer. In this, his acts differ from those in *Hardy*.

Additionally, Mr. Mason's affidavits and the deposition of Mr. Barrett could support the following contentions: Mr. Barrett was the only Kenyon employer to supervise the warehouse crew on a daily basis; he was responsible for maintaining day-to-day discipline at the warehouse; and it was his duty to supervise the crew's completion of tasks, all to the end that the crew might more efficiently perform the master's business of loading goods. Kenyon's affidavits to the contrary create a genuine issue of material fact whether he had implied authority to maintain discipline in this manner.

We conclude there are genuine issues of material fact to establish Mr. Mason's cause of action against Kenyon. The summary judgment of dismissal is reversed and the cause remanded for trial.

THOMPSON, C.J., and MUNSON, J., concur.

---

[6]We point out that *Hardy*, in setting forth this rule, has not relied on the supervisor/co-worker line of cases, but on the employee/third party line of cases.