FILED
COURT OF APPEALS
DIVISION II

2014 DEC -2 AM 8: 58

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44843-2-II |
| Respondent, | |
| v. | |
| JESSE COLE HUNOTTE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Jesse Cole Hunotte appeals his jury trial conviction for a felony violation of a domestic violence court order. He argues that (1) the trial court erred when it amended the to-convict instruction after having read the instruction to the jury, and (2) the State failed to present sufficient evidence to prove that he had personal contact with the protected party, that he was the person named in one of the two no-contact/protection orders at issue, or that he had knowledge of either no-contact/protection order. We hold that Hunotte's jury instruction argument has no merit and that the evidence is insufficient to establish Hunotte's knowledge of a superior court order or that he had personal contact with the protected party as prohibited by a municipal court order. But we further hold that because the trial court provided the jury with a unanimity instruction and the evidence was sufficient to allow a jury to unanimously find that Hunotte

violated the municipal court order by contacting the protected party by telephone, we must reverse and remand for additional proceedings rather than dismiss.

FACTS

I. BACKGROUND

On October 17, 2012, a Tacoma police officer served Hunotte with a copy of a Pierce County Superior Court temporary protection order restraining him from contacting his girlfriend, Tajha Anne Ekstrand. The superior court held a hearing to extend this protection order on October 23, 2012; the court extended the order for a year.[1] The order includes the following notation on the "Respondent" signature line: "Checked in but did not remain when case was called. Left courtroom 20 minutes prior." Ex. 3, at 4. This order named "Tajha Ann Ekstrand," date of birth December 1972, as the protected party and "Jesse Cole Hunotte," date of birth December 9, 1976, as the respondent. Ex. 3, at 1. It also stated that Hunotte was a white male, was 5 feet 11 inches tall, and weighed 175 pounds.

---

[1] The superior court protection order prohibited Hunotte from (1) causing harm, molesting, harassing, threatening, or stalking Ekstrand; (2) harassing Ekstrand by electronic means; (3) coming near Ekstrand or having any contact with her whatsoever in person or through others, by phone, mail, or any other means other than for service of court documents by a third party or attorney contact; (4) entering the grounds or going into Ekstrand's residence, employment, or school; (5) knowingly coming or remaining within the property boundaries of such places; and (6) having contact with Ekstrand's son.

On January 23, 2013, Ekstrand obtained a Tacoma Municipal Court domestic violence no-contact order.[2] This order named "Tajha Ekstrand," date of birth December 1972, as the protected party and "Hunotte, Jesse," date of birth January 29, 1976, as the defendant. Ex. 2. It also stated that Hunotte was a white male, was 5 feet 11 inches tall, and weighed 180 lbs. There is an illegible signature on the "Defendant" signature line in this order.

On January 27, 2013, Hunotte's brother came to Ekstrand's apartment to pick up some of Hunotte's belongings. Although she later testified that she did not see Hunotte, Ekstrand assumed Hunotte was nearby and she told her son "to sneak out" and go to "the neighbors and tell them." 2 Report of Proceedings (RP) at 158. The neighbor called the police. Tacoma Police Officer Edwin Franklin Huebner responded to the call.

About 11 minutes after the call, Officer Huebner approached the area and saw Hunotte and his brother walking about a half to three quarters of a mile from Ekstrand's apartment, so he pulled over and called to Hunotte. Hunotte responded to Officer Huebner; Hunotte's brother walked away. Officer Huebner detained Hunotte.

Meanwhile, Tacoma Police Officer Jared Williams contacted Ekstrand at her apartment and took a statement.[3] Ekstrand told Officer Williams that another person was with Hunotte. Officer Williams then joined Officer Huebner where he had detained Hunotte. At some point,

---

[2] The municipal court domestic violence no-contact order prohibited Hunotte from (1) causing or attempting to cause harm, molesting, harassing, threatening, or stalking Ekstrand; (2) coming near or having any contact whatsoever with Ekstrand in person or through others, by phone, mail or any means other than for service of court documents by a third party or attorney contact; or (3) coming within 500 feet of Ekstrand's workplace or residence.

[3] This statement was not admitted at trial.

Officer Williams determined that there was a protection order prohibiting Hunotte from contacting Ekstrand.

During a subsequent search, officers found a set of keys and $160 in Hunotte's pockets.[4] Officer Williams returned the keys to Ekstrand.

After the officers transported Hunotte to jail, a corrections officer monitoring inmate telephone calls overheard a call from the booking area to a telephone number that traced back to a Jason Smalley at Ekstrand's address. The call was recorded and was later played for the jury. During this call, a man and a woman were talking about $160 that was found in the man's wallet when he was arrested. The woman kept accusing the man of taking her money, and the man insisted that he did not know the money was in his wallet. He also said he had tried unsuccessfully to have an officer give her the wallet along with some keys the officer delivered to her.

Later that afternoon, Ekstrand called Officer Williams and he returned to her apartment. After speaking to Ekstrand, Officer Williams went to the jail to attempt to "retrieve" the $160 "that had been booked with Mr. Hunotte." 2 RP at 119-20. Officer Williams was unable to do so.

## II. Procedure

### A. Charge and Testimony

Because Hunotte had two prior convictions for violating a domestic violence protection order, the State charged him with a felony violation of a domestic violence protection order.[5] The information alleged that Hunotte had violated "Pierce County Superior Court order 12-2-03671-9

---

[4] According to Officer Huebner, when the officers found the money, Hunotte "looked surprised," and stated, "['I]t shouldn't be there.[']" 1 RP at 47.

[5] RCW 26.50.110(5).

4

and/or Tacoma Municipal Court order D00045167." Clerk's Papers (CP) at 6. Hunotte stipulated that he "had two prior convictions for violation of a court order." CP at 9, 12 (bold type omitted). The State's witnesses testified consistent with the facts above, and the trial court admitted copies of the October 2012 Pierce County protection order and January 2013 Tacoma Municipal Court no-contact order. The jury had access to the admitted copies of the protection order and the no-contact order.

In addition, Ekstrand was a reluctant witness for the State.[6] Throughout her testimony, she repeatedly asserted that she had trouble recalling anything from about October 27, 2012 until early April 2013 because she had been on medication for an injury. She testified, however, that Hunotte's brother had come to her house to get some of Hunotte's property and that the brother was going to meet Hunotte at a friend's house about a mile away. She admitted that she had her son go to the neighbor's house because she "assumed that [Hunotte] was in the neighborhood with his brother," but she denied having told any officer that she had sent her son to the neighbor's after Hunotte arrived at her apartment. 2 RP at 160. And she testified that she never actually saw Hunotte and that she had given Hunotte's brother some of Hunotte's belongings, including his wallet. She was also unable to recall whether she called the police later and told them that Hunotte had taken $160 from her purse when he was inside her home. She did, however, recall an officer coming to her house and asking about her house keys. She also testified that she did not remember telling the officer that Hunotte had arrived at her apartment, that he had come into her apartment and "freak[ed] out and want[ed] his belongings," or that Hunotte still had her keys. 2 RP at 162.

---

[6] At one point, the trial court sent Ekstrand to jail for contempt when she refused to answer the State's questions.

Additionally, Ekstrand could not recall if she spoke to Hunotte on the phone later that day. And after hearing the recording of the call, she testified that she could not verify that it was her voice or Hunotte's voice on the recording.

Ekstrand acknowledged that she had obtained the October 2012 Pierce County protection order, but she testified that she never "served" it. And she testified that she was not aware of a municipal court protection order.

### B. JURY INSTRUCTIONS AND CLOSING ARGUMENT

After the parties rested, the trial court read the jury instructions to the jury. The trial court's to-convict instruction stated in part, "That on or about said date the defendant knowingly violated a provision of this order [*in person*]."[7] CP at 29 (emphasis added). The trial court also provided the jury with a *Petrich*[8] unanimity instruction that stated,

> The State alleges that the defendant committed acts of violation of a court order on multiple occasions. To convict the defendant of violation of a court order, one particular act of violation of a court order must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of violation of a court order.

CP at 26.

After the trial court read all of the instructions to the jury but before the jury retired to deliberate, the State asked the trial court to strike the phrase "in person" from the to-convict instruction and to reinstruct the jury. Hunotte's counsel objected, arguing that the instructions the trial court had read to the jury were the "law of the case" and could not be altered. Hunotte's

---

[7] Neither party objected to this instruction before the trial court orally instructed the jury.

[8] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984).

6

counsel also told the trial court that he had relied on the law as stated in the to-convict instruction in preparing closing argument, so any change at this time would prejudice Hunotte. The trial court disagreed with Hunotte, struck the phrase "in person" from the written instruction, and read the altered to-convict instruction to the jury. Hunotte's counsel did not request additional time to prepare for argument.

In its closing argument, the State argued that Hunotte had violated each order twice—once by going to her home and again by calling her from the jail.[9] The State reminded the jury that because it was alleging more than one violation of the court order, the jury had to be unanimous as to what act was "the violation of the no contact order." 3 RP at 210. And it argued that although the jury could find that Hunotte had violated both court orders, it need only be unanimous as to one.

Hunotte argued that (1) the State had to prove knowledge of the order, (2) if the jury believed the signature on the municipal court order was Hunotte's, the State had proved knowledge of that order, (3) the State did not prove that Hunotte had been served with the superior court order, (4) there was no proof that Hunotte went to Ekstrand's house, and (5) the State failed to prove that Hunotte had made the call from the jail. Hunotte did not talk about any unanimity issues.

The jury convicted Hunotte of felony violation of a domestic violence protection order. Hunotte appeals his conviction.

---

[9] Throughout the trial and closing argument, neither party mentioned that the underlying orders could also be violated by contact through a third party.

DISCUSSION

I. AMENDED TO-CONVICT INSTRUCTION

Hunotte first argues that the trial court erred when it amended the to-convict instruction and reinstructed the jury before the jury's deliberations. Although Hunotte presents this argument as a "law of the case" argument, because the jury reached its verdict based on the corrected instruction, the real issue here is whether the trial court abused its discretion in giving the corrected jury instruction.[10] *See State v. Calvin*, ___ Wn. App. ___. 316 P.3d 496, 506 (2013). We hold that the trial court did not abuse its discretion.

Generally, if the parties do not object to a jury instruction, it becomes the law of the case and the State must prove any added elements stated in a to-convict instruction. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). But a trial court has the discretion to give additional instructions to the jury, even if the jury has started deliberating. *State v. Langdon*, 42 Wn. App. 715, 718, 713 P.2d 120, *review denied*, 105 Wn.2d 1013 (1986); *see also* CrR 6.15(f)(1) (court may give additional instruction on any point of law in response to jury questions during deliberations). The court abuses that discretion only when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Wilson*, 144 Wn. App. 166, 183, 181 P.3d 887 (2008). It is within the trial court's discretion whether to give supplemental instructions to the jury as long as those instructions "do not go beyond matters that had been, or could have been, argued to the jury." *Calvin*, 316 P.3d at 507 (citing *State v. Hobbs*, 71 Wn. App.

---

[10] Although we reverse on other grounds, we address this issue because if Hunotte's "law of the case" argument was correct, it would affect our sufficiency analysis.

419, 424, 859 P.2d 73 (1993)); *see also State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469 (1990).

Hunotte relies on *Hickman* for the proposition that the State was required to object to the to-convict instruction before the trial court instructed the jury. *Hickman* does not, however, establish that the trial court cannot amend an instruction after orally instructing the jury but before deliberations. It merely establishes that an instruction becomes the law of the case if there is no objection. And, unlike here, Hickman did not object to the instruction at any time during the trial court proceeding. *Hickman*, 135 Wn.2d at 100-01.

Instead, we find *Hobbs* more instructive. In *Hobbs*, the trial court gave the jury an instruction that unnecessarily narrowed the venue element to a particular county rather than to the State of Washington. 71 Wn. App. at 420-21. While the jury was deliberating, the trial court granted the State's motion to amend the instruction to remove this defect. *Hobbs*, 71 Wn. App. at 421. Defense counsel objected, arguing that she had been aware of the narrowed venue element and had made strategic trial decisions based on that knowledge. *Hobbs*, 71 Wn. App. at 421, 424. On appeal, although Division One of this court ultimately reversed,[11] the court acknowledged that trial courts can give supplemental instructions to the jury so long as those instructions did not go beyond matters that had been, or could have been, argued to the jury. *Hobbs*, 71 Wn. App. at 424.

Here, unlike in *Hobbs*, the trial court corrected the jury instruction *before* the jury started its deliberations and *before* closing argument. Although defense counsel may have planned his

---

[11] The court held that because Hobbs's counsel had adapted her trial strategy to reflect the original instruction, there was actual prejudice and remanded for a new trial with proper instructions. *Hobbs*, 71 Wn. App. at 425.

closing argument based on the original instruction, he had the opportunity to alter his argument to reflect the corrected instruction. Because the trial court amended the jury instruction before the jury started to deliberate and before closing argument and because there is no other suggestion in the record that defense counsel made any strategic trial decisions based on the original instruction, Hunotte fails to show that the trial court abused its discretion is amending the jury instruction and this argument fails.

## II. SUFFICIENCY

Hunotte next argues that the State failed to present sufficient evidence to prove that (1) he had knowledge of either of the no-contact/protection orders, (2) he violated the orders by having personal contact with Ekstrand, and (3) he was the person named in the municipal court no-contact order. We agree that the evidence was insufficient to prove that Hunotte violated the municipal court order by having personal contact with Ekstrand or that he had knowledge of the Pierce County protection order. But we hold that the evidence was sufficient to prove that Hunotte violated the municipal court order by having telephone contact with Ekstrand.[12] Because the evidence was sufficient to support a conviction based on one of several acts, but we have no way of discerning which act the jury relied on when reaching its verdict in this multiple acts case, reverse and remand, rather than dismissal, is appropriate.

### A. STANDARD OF REVIEW

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003).

---

[12] Hunotte does not argue that there was insufficient evidence that he contacted Ekstrand by telephone.

The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *Wentz*, 149 Wn.2d at 347). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We consider both circumstantial and direct evidence as equally reliable.[13] *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

## B. KNOWLEDGE

To prove a violation of a no-contact order, the State had to prove beyond a reasonable doubt that Hunotte knew of the existence of the no-contact/protection orders that the State alleged he violated. *State v. Washington*, 135 Wn. App. 42, 49, 143 P.3d 606 (2006), *review denied*, 160 Wn.2d 1017 (2007). Hunotte argues that the State failed to present sufficient evidence to prove that he knew about either of the orders. We agree that the State failed to prove knowledge of the Pierce County Superior Court protection order, but the State did prove knowledge of the municipal court order.

The evidence established that Hunotte was served with notice of the temporary Pierce County order, that he was present in the courtroom on the date the superior court held the hearing on whether to extend the order, and that he left the courtroom 20 minutes before the case was called. But there is no evidence in the record showing that Hunotte knew that the superior court in fact extended this order—there was no evidence that he was present when the superior court

---

[13] We address the proper remedy under these circumstances in a separate section below.

extended the order or that Hunotte was ever served with the resulting order. Accordingly, the State failed to prove knowledge of the Pierce County order.

In contrast, however, there is sufficient evidence that Hunotte had knowledge of the municipal court order. The municipal court order has an illegible signature on the "Defendant" signature line. Viewing the evidence in the light most favorable to the State, this is sufficient to allow a reasonable jury to conclude that Hunotte was aware of this order. *See State v. France*, 129 Wn. App. 907, 911, 120 P.3d 654 (2005) (certified copy of no-contact order signed by defendant sufficient to establish knowledge of that order).

### C. IN-PERSON CONTACT

Hunotte further argues that the evidence was insufficient to prove that he violated the court orders by having personal contact with Hunotte. We agree there was insufficient evidence that he had personal contact with Hunotte.[14]

Although the evidence was sufficient to show that the police found Hunotte within a half to three quarters of a mile of Ekstrand's home and that Hunotte had Ekstrand's keys and money when he was arrested, there was no evidence that Hunotte had been at or in the immediate vicinity of Ekstrand, her son, or their home. At best, it suggested that Ekstrand assumed Hunotte might be in the area when his brother arrived.[15] This does not establish that Hunotte violated the court orders by coming near Ekstrand or by being within 500 feet of Ekstrand's residence.

---

[14] Again, we note that Hunotte does not argue that there was insufficient evidence to prove that he contacted Ekstrand by phone.

[15] We note that the State never argued that Hunotte's brother's contact with Ekstrand violated the municipal court order.

### D. IDENTITY

Hunotte next argues that the State failed to prove the identity of the person named in the municipal court no-contact order because the State presented no evidence that he was the person named in that order.[16] We disagree.

The State had the burden of proving that Hunotte was the person who committed the offense. *See State v. Hill*, 83 Wn.2d 558, 560, 520 P.2d 618 (1974). In respect to whether Hunotte violated the municipal court order, this included the burden of proving that he was the same person named in that order. *See State v. Huber*, 129 Wn. App. 499, 502, 119 P.3d 388 (2005). But to do so, "the State must do more than authenticate and admit the document; it also must show beyond a reasonable doubt 'that the person named therein is the same person on trial.'" *Huber*, 129 Wn. App. at 502 (quoting *State v. Kelly*, 52 Wn.2d 676, 678, 328 P.2d 362 (1958)); *see also State v. Brezillac*, 19 Wn. App. 11, 12, 573 P.2d 1343 (1978). Identity of names alone is not sufficient because people often share identical names. *Huber*, 129 Wn. App. at 502; *see also State v. Harkness*, 1 Wn.2d 530, 542-43, 96 P.2d 460 (1939). Rather, the State must show, "'by evidence independent of the record,'" that the person named in the prior orders is the defendant. *Huber*, 129 Wn. App. at 502 (quoting *United States v. Jackson*, 368 F.3d 59, 63 (2d Cir. 2004)).

Here, the two orders contained almost identical identifying information[17]; involved the same protected party, Ekstrand; and Ekstrand testified that she had obtained the October 2012

---

[16] Hunotte admits that the State presented sufficient evidence to prove that he was the person named in the superior court order.

[17] The only significant difference in the identifying information in the two orders were the Hunotte birthdates. The birthday noted on the municipal court order was "1/29/76," while the birthday noted on the superior court order was "12/09/1976." Exs. 2, 3. This discrepancy could easily be explained by someone misplacing the slash between the date and the month.

protection order against Hunotte. We hold that based on this evidence a rational fact finder could have found that Hunotte was the same person named in the municipal court order.

Although Hunotte argues that the similarity of names is not conclusive proof that he was the person named in the municipal court order because there was no proof that both he and Ekstrand were the same people named in both orders, we disagree. In a sufficiency argument, conclusive proof is not required; we consider circumstantial and direct evidence as equally reliable. *Thomas*, 150 Wn.2d at 874. And the similarity of names, the identical birth dates for Ekstrand, and the identical general physical descriptions of Hunotte in the two orders, combined with Ekstrand's testimony that she had sought the Pierce County order, provide sufficient circumstantial evidence that Hunotte was the person named in the municipal court order.

## E. REMEDY

The usual remedy for insufficient evidence is to reverse the conviction and dismiss the charges with prejudice. *State v. B.J.S.*, 140 Wn. App. 91, 97 n.2, 169 P.3d 34 (2007). But in this unique case, where there was sufficient evidence that Hunotte committed the charged crime by one of the multiple acts alleged, that remedy is not appropriate. Because there is no way for us to discern which act the jury relied on to convict Hunotte, the court's unanimity instruction was not sufficient to preserve Hunotte's constitutional guarantee of a unanimous verdict. To protect Hunotte's guarantee of a unanimous verdict, we reverse the convictions but remand for further proceedings. *See State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). Because we hold that there was insufficient evidence of Hunotte's knowledge of the superior court order or that he violated either order in person, however, the State may not pursue charges based on the superior court order or the alleged personal contact. *See B.J.S.*, 140 Wn. App. at 97 n.2.

14

No. 44843-2-II

We reverse and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.